# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7652 | **DATE** | 3/21/2002 |
| **CASE TITLE** | Jefferi Smith vs. Larry G. Massanari, Acting Commissioner of Social Security | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Cross Motions for Summary Judgment Pursuant to Fed. R. Civ. P. 56

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   For the reasons set forth in the attached Memorandum Opinion and Order, summary judgment is GRANTED in favor of Smith and against the Commissioner [14-1]. The Commissioner's motion for summary judgment is DENIED [17-1]. Pursuant to Sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and the case is remanded for an award of benefits.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| | Notices mailed by judge's staff. | | | MAR 25 2002 | | |
| | Notified counsel by telephone. | | | date docketed | | |
| X | Docketing to mail notices. | | | IS | | 20 |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| klb (lc) | | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFERI A. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 00 C 7652 |
| v. | ) |
| | ) HONORABLE DAVID H. COAR |
| LARRY G. MASSANARI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

MAR 2 5 2002

## MEMORANDUM OPINION AND ORDER

This is a civil action for judicial review of the denial by the Defendant, the Commissioner of Social Security ("Commissioner"), of the claim of Plaintiff, Jefferi A. Smith, for Disability insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382c(a). This Court has jurisdiction to review Defendant's final administrative decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). Before this Court are cross motions for summary judgment by Smith and the Commissioner pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Smith's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied.

### I. Procedural History

On February 5, 1997, Smith applied for DIB, stating that he had been disabled since August 22, 1999. After his DIB application was denied initially, he requested reconsideration



and applied for SSI. His SSI application was given a protective filing date of October 28, 1997. After his applications were denied on reconsideration, Smith requested an ALJ hearing. On December 3, 1999, Smith appeared with counsel at an administrative hearing before ALJ Robert Joyner. At the hearing, Smith amended his onset date to January 1, 1997. On February 24, 2000, the ALJ decided that Smith was not disabled. On October 3, 2000, the Appeals Council denied Smith's request for review of the ALJ's decision. Therefore, the ALJ's decision became the final decision of the Commissioner. 42 U.S.C. § 405(g); 20 C.F.R. § 422.210(a) (2000). Smith filed his Complaint in this Court on December 6, 2000, seeking reversal of the ALJ's decision for lack of substantial evidence.

## II. Factual Background

Smith was born on April 10, 1960 and was thirty-nine (39) years old on the date of the ALJ's decision. He has an eighth grade education. He has worked as a bus driver, sales route driver, and a tow truck operator.

**Medical Evidence**

Smith has a long history of cluster-type headaches. He has frequently sought treatment, including emergency room treatment, for his headaches. For seven years he was prescribed Prednisone for his painful condition.

Smith also has a long history of drug and alcohol use. Smith's drugs of choice included alcohol, cocaine, marijuana and heroin. The medical records reflect numerous assessments that the claimant could not work during periods of active drug and alcohol abuse. On November 17, 1996, Smith was examined by Jacques Herter, a clinical psychologist, at the request of a vocational rehabilitation agency. Dr. Herter observed Smith to be impatient and easily frustrated,

suspicious, and mildly hyper vigilant. Smith told Dr. Herter that he experienced mood swings several times a year and reported three impatient psychiatrist hospitalizations. Smith also described his long history of drug use but told Dr. Herter that he had been clean for the last six months.

Testing showed that Smith was functioning in the borderline intellectual range, with a verbal IQ of 80, a performance IQ of 75, and full scale IQ of 77. Dr. Herter stated that, based on testing, Smith could not handle vocational/technical level training or junior college level course work. Dr. Herter described Smith as "most rigid and concrete thinking, with no significant capacity for psychological insight or self understanding." Dr. Herter diagnosed Smith with the following conditions: Bipolar I Disorder[1] with rapid cycling, provisional; Schizoaffective Disorder,[2] bipolar type, provisional; Polysubstance Dependence; Borderline Intellectual Functioning; and Personality Disorder, NOS, with antisocial features.[3] Dr. Herter concluded that

---

[1] Bipolar I Disorder is characterized by the occurrence of one or more Manic Episodes (a distinct period of abnormally and persistently elevated, expansive, or irritable mood) or Mixed Episodes (rapidly alternating moods). Often individuals have also had one or more Major Depressive Episodes. Amer. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) (DSM-IV), at 350-351.

[2] The essential feature of Schizoaffective Disorder is an uninterrupted period of illness during which, at some time, there is a Major Depressive, Manic, or Mixed Episode concurrent with symptoms that meet Criterion A for Schizophrenia (delusions, hallucinations, disorganized speech, grossly disorganized or catatonic behavior or negative symptoms such as flattened affect). DSM-IV, at 292-296.

[3] A Personality Disorder is an enduring pattern of inner experience and behavior that deviates markedly from the expectations of the individual's culture, is pervasive and inflexible, has an onset in adolescence or early adulthood, is stable over time, and leads to distress or impairment. Antisocial features suggest a pattern of disregard for, and violation of, the rights of others. DSM-IV, at 629.

whether Smith had a bipolar disorder or a schizoaffective disorder, bipolar type, Smith had a "serious psychopathology that presents as being a significant vocational handicap."

On February 4, 1997 Smith's testing results were reviewed at a vocational rehabilitation agency; Smith became quite agitated and upset over the academic portions of his psychological evaluation. Smith was encouraged to engage in Literacy Volunteers of America, which Smith took to be insulting. Smith expressed his frustration that testing showed him to have aptitudes as a lab worker, a meter reader, or working as a mail clerk when he wanted to consider jobs such as obtaining a pilot's license.

On March 26, 1997, Robert Strayer, a therapist at Campbell County Memorial Hospital, wrote a letter to the agency, informing it that Smith's response to individual counseling had been marginal, partly due to his poor attendance.

On August 4, 1997, Smith was examined at Marion County Mental health. He came in crying, scared, and paranoid about someone being after him. He was described as acutely depressed and paranoid. The following day he was seen at Salem Hospital in the emergency room for headaches and depression and was willing to voluntarily admit himself to Good Samaritan Hospital.

On August 26, 1997, Smith was examined by Leslie Pitchford, a licensed psychologist. At the time of the interview, Smith was homeless and staying in a park. Smith told Dr. Pitchford that he was no longer using drugs and alcohol. During testing, Smith became very upset, stating that the psychologist was trying to "make a fool out of" him. She stopped the testing because he seemed too angry and upset to continue. Dr. Pitchford noted that Smith became tearful quickly into the interview, he was not fully coherent, and he was distraught and hopeless. He seemed

hostile, but was generally cooperative until testing began. Dr. Pitchford noted that Smith's thought process seemed strained, and verbal output was interrupted by tearfulness and confusion. He appeared to have problems with concentration and memory and his content of thought was hard to assess because of his extreme depressive focus and near depression. Dr. Pitchford diagnosed Smith with Major Depression, severe, recurrent; history of Polysubstance Dependence (in remission for 2 years by Smith's account); and Organic Brain Syndrome, unspecified. She assigned a Global Assessment of Functioning score of 45, reflecting very severe symptoms. She found him to be a significant suicide risk and stated that he would do best in a structured living situation. Dr. Pitchford felt that Smith was not competent to hold down work. Dr. Pitchford completed a Mental Residual Functional Capacity Assessment indicating that Smith is markedly limited in his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; to work in coordination with or proximity to others without being distracted by them; to make simple work related decisions; to complete a normal workday and work week without interruptions for psychologically based symptoms; to interact appropriately with the general public; to accept instruction and respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior. Dr. Pitchford also noted that Smith had marked restriction of activities of daily living, marked difficulties in maintaining social functioning, and continual episodes of deterioration or decompensation.

On March 6, 1998, Smith was examined by Barb Carter, a qualified mental health professional. Smith sought help because he was feeling angry and on edge all the time. Carter

described Smith as having rigid posture, poor eye contact, and an agitated, angry, loud manner. He had poor concentration and she was unable to assess short term or remote memory. He was coherent, but illogical and tangential. Carter diagnosed Smith with Schizoaffective Disorder, suggested ruling out drug involvement, and assigned a GAF of 25.[4]

On March 9, 1998, Smith was examined by Elizabeth Cooper, a psychiatric mental health nurse practitioner. At that time, Smith had been 30 days clean and sober from heroin, was being treated at the Harmony House Drug Program, and was living at the Rap House Recovery. Cooper described Smith's affect as "flat to intense" with good eye contact. His speech was rather colloquial and showed evidence of paranoia, while his memory appeared to be good and showed evidence of being able to concentrate. Cooper found Smith's judgment and insight impaired by a thought disorder and a low intelligence level. He was much calmer than when examined by Carter in that his speech was less pressured and less intense in its rhythm and he was not mumbling. Cooper diagnosed Smith with Schizoaffective Disorder; Heroin Dependency, in early remission; and Antisocial traits. She assigned a GAF of 30. By March 12, 1998, Smith's paranoid ideation was improving with medications. On April 3, 1998, Smith exhibited some paranoia, thinking there was a plot against him. Smith then missed several appointments. The discharge summary on October 12, 1998 indicated that treatment had stopped in May 1998 because Smith had moved.

---

[4] A Global Assessment Functioning score of 21 to 30 indicates that "behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g. stays in bed all day; no job, home or friends)." DSM-IV, at 32.

In March, 1998, Smith was examined by Dr. Robert Kruger, a psychologist. Dr. Kruger reviewed the reports of Drs. Herter and Pitchford. Smith reported last using heroin in 1995. He was still homeless. Smith appeared to be talkative, resigned and pleasant. He did not demonstrate any gross articulation difficulties and his speech was easily understood. He appeared to be alert and responsive, and he provided goal-directed information. Dr. Kruger observed Smith to have good attention and his memory appeared to be grossly intact. Smith's general fund of information was seen as poor. Dr. Kruger noted Smith's overall attention ability to be good, such that he would be able to persist for an appropriate period of time on brief, basic, repetitive tasks. Dr. Kruger diagnosed Smith with Major Depression, recurrent, in partial remission; history of Polysubstance Abuse; Personality Disorder NOS, Antisocial features; and Borderline Intellectual Functioning. He assigned a GAF of 65.

Smith was admitted to Central DuPage Hospital in Illinois on May 11, 1999. At the time of his admission he was severely depressed and was observed to be almost catatonic and mute at the initial evaluation. He admitted that he had been extensively using substances, including alcohol on a daily basis. He had been using $150.00 of heroin per day. He displayed multiple problems with an inability to concentrate and focus and seemed confused and agitated. Smith reported that substance abuse was dominating his life, and that he was depressed and overwhelmed and wanted to get his life back in order. He had severe alcoholic hepatitis with elevated liver enzymes. At discharge, Smith was found to have taken needles and ampules of narcotics and hidden them in his room. Dr. Orland concluded that his prognosis was guarded and he seemed "amotivated."

On August 13, 1999, Smith was admitted to Hinsdale Hospital presenting with a history of chemical dependency and reporting a high usage of daily heroin. He was admitted for inpatient medical stabilization.

On December 22, 1999 Smith was examined at Rehabilitation Medicine Clinic, Inc. by Dr. Richard Krieger, a physical medicine and rehabilitation specialist for evaluation of his chronic headaches. Dr. Krieger concluded that Smith's history was consistent with a cluster headache picture. He recommended entry into a comprehensive pain program.

**Medical Expert Dr. Smith's Testimony**

Dr. Roger's Smith, a board-certified psychiatrist and neurologist, testified as a medical expert. Dr. Smith testified that Smith met Listing 12.03 and 12.04. He also testified that Smith met listing 12.09 with his intermittent, long-standing addictive tendency, but that his substance use was not a "material cause" of his disorders. Under the B criteria, Dr. Smith testified that Smith was moderately limited in his activities of daily living; was markedly limited in his social functioning; frequently suffered deficiencies of concentration, persistence and pace; and had repeated episodes of deterioration. Dr. Smith also testified that Smith's borderline intellectual functioning was reflected in his minimal academic achievement, but that he had overcome that vocationally with his job with the newspapers.

**Vocational Expert's Testimony**

A vocational expert, Mr. Eliot, identified Smith's past work as "medium" work as a bus driver, a tow truck operator, and sales route driver. He was asked by the ALJ to consider a hypothetical person who had no physical impairments and could perform repetitive, non-public, work that involved no contact with co-workers. Mr. Eliot testified that Smith's past work in

newspaper delivery would fall within that hypothetical. When the ALJ added the additional limitation of a low-stress environment, the vocational expert ruled out the delivery job. The vocational expert testified that other jobs under that hypothetical would involve being a porter on a used car lot, a vehicle washer, equipment cleaner, or cook helper.

The ALJ then added a limitation to simple, repetitive, non-public, work with limited contact with co-workers and limited supervision. The vocational expert testified that such a person could perform work as a sorter of agricultural produce, an assembler of small products, and a seedling sorter. He testified that if Smith's testimony were accepted as fully credible, there were no jobs that Smith could perform. Smith's attorney asked Mr. Eliot if headaches which occurred several times a week and interrupted job performance for 1 ½ hours at a time would prevent competitive employment, to which Mr. Eliot replied yes.

### III. Standards

Judicial review of the Commissioner's final decision is limited. This Court determines whether substantial evidence in the record as a whole supports the decision to deny benefits. See Pope v. Shalala, 998 F.2d 473, 480 (7th Cir. 1993); Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence," in this context means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 28 L. Ed. 2d 842, 91 S. Ct. 1420 (1971). The Court does not "reevaluate the facts, reweigh the evidence, or substitute its own judgment." Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994) (citation omitted). The Court will affirm the Commissioner's decision if it is reasonably drawn from the record and is supported by substantial evidence, even if some evidence may also support the claimant's position. See 42 U.S.C. §§ 405(g), 1383(c)(3). Nevertheless, in making his decision,

the ALJ must articulate some minimal basis for the conclusions that he reaches so that the reviewing court may "trace the path" of the ALJ's reasoning. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). And, although the ALJ may credit certain evidence and discredit other evidence, he may not simply ignore evidence favorable to the claimant in articulating the basis for his decision. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998).

With respect to the pending cross-motions, summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); See also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986). If the moving party meets this burden, the non-movant must then respond by setting forth specific facts that demonstrate the existence of a genuine issue for trial. Fed.R.Civ.P.56(e). The court must consider the record as a whole and draw all reasonable inferences in the light most favorable to the non-moving party. Bay v. Cassens Transport, Co., 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986).

### IV. The Statutory and Regulatory Framework

To establish a disability under the Social Security Act, plaintiffs must satisfy two conditions. First they must have a physical or mental impairment that is expected to be fatal or that has lasted for a continuous period of at least twelve months. Second, they must show that the impairment or impairments prevent them from engaging in substantial, gainful, employment. See

42 U.S.C. § 1382c(a)(3). It is the claimants' burden to show a disability. See, e.g., Steward v. Bowen, 858 F.2d 1295, 1297 n.2 (7th Cir. 1988).

The Social Security regulations require the fact finder to follow a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520. The sequential five-step inquiry requires the Commissioner to determine whether a claimant: (1) is not doing substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals one listed by the Commissioner; (4) can perform her past work; and, (5) is capable of performing any work in the national economy. See id. A claimant who does not have a listed impairment (step three) but cannot perform his past work (step four), shifts the burden of showing that he can perform some other job (the fifth step) to the government. Pope v. Shalala, 998 F.2d 473, 477-78 (7th Cir.1993) (citing Schroeter v. Sullivan, 977 F.2d 391, 393 (7th Cir.1992)). At the fifth step, the claimant's physical and mental impairments, age, education, and work experience are all relevant. See Paige v. Bowen, 695 F. Supp. 975, 977-78 (N.D.Ill.1988). The ALJ can use the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404 Subpart P, Appendix 2, also known as "the Grid," to determine the claimant's capability of performing some other job. See, e.g., Caldarulo v. Bowen, 857 F.2d 410, 413 (7th Cir. 1988).

### V. Review of the Commissioner's Final Decision

The ALJ determined at step one that Smith has performed no substantial gainful activity since January 2, 1997, the alleged onset date as amended by the claimant at the hearing. He also found that Smith met the special insurance requirements of the Act on that date and has continued to meet them through the date of the decision. At step two, the ALJ determined that the medical evidence established that Smith had several impairments which, in combination,

-11-

were considered severe under the Social Security Regulations because they had more than a minimal impact on the Smith's capacity to perform basic work functions. Those impairments were listed as chronic headaches and mental illnesses. At step three, the ALJ determined that Smith's impairments (including his substance addiction) met Listings 12.04 and 12.09, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, §§ 12.04, 12.09 (2000). At step four, the ALJ determined that when Smith is clean and sober he retained the residual functional capacity to perform work involving simple repetitive tasks, no public contact, or more than occasional contact with peers or supervisors. Given that residual functional capacity, Smith could not perform his past relevant work, even when not abusing drugs or alcohol. At step five, the ALJ relied on vocational-expert testimony to determine that Smith was not disabled. The ALJ found that Smith could work as a sorter of agricultural products, assembler of small products, and a seedling sorter. Finally, given that Smith would be disabled only if his substance addiction were taken into account, the ALJ determined that Smith's substance addiction would be a contributing factor material to a finding of disability. Therefore, Smith was not disabled.

Under the Social Security Act, "an individual shall not be considered to be disabled ... if alcoholism or drug addiction would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J). The regulations address how an ALJ should determine whether substance addiction is a contributing factor material to a finding of disability. 20 C.F.R. § 404.1535 (2000). The question is whether a claimant would still be disabled if the claimant stopped using drugs and alcohol. 20 C.F.R. § 404.1535 (2000).

The agency has provided guidance besides section 404.1535 relevant to determining whether a claimant's substance addiction is a contributing factor material to a finding of disability. In an August 30, 1996 Emergency Teletype, Questions and Answers Concerning DAA, the agency states:

> When it is not possible to separate mental restrictions and limitations imposed by the DAA and the various mental disorders shown by the evidence, a finding of "not material" would be appropriate.

Emergency Teletype on DAA, August 30, 1996, Answer 29.

Plaintiff argues that the ALJ erred in failing to adopt the opinion of the medical expert, Dr. Smith, a licensed psychiatrist, who testified that Plaintiff's addiction was not material to the determination of disability. Dr. Smith testified that, based on the medical record and testimony, he concluded that Plaintiff met Listing 12.04 (affective disorder) with related aspects of schizoaffective illness. He noted that Plaintiff had an intermittent, long standing addictive tendency that was related to, but not the cause of his other mental impairments. He concluded that Plaintiff had moderate restrictions in daily living; markedly limited social functioning; frequent deficiencies in concentration, persistence, and pace; and repeated episodes of deterioration or decompensation. Thus, the medical expert did not believe that Plaintiff's addictive disorder was material to his other mental impairments.

Plaintiff argues that if the ALJ had properly evaluated Dr. Smith's opinion, he would have found Plaintiff disabled. The ALJ determined that he should give more weight to the opinions of the state agency psychologists than to that of Dr. Smith. The ALJ stated:

> The conclusions reflected in the medical record, and accepted by Dr. Smith, that rule out substance abuse as a contributing factor appear based on reported intermittent drug and alcohol abuse. Such assertions are not supported by the

-13-

> longitudinal record of the claimant's habitual drug and alcohol abuse, and return
> to active drug and alcohol abuse following brief periods of remission marked by
> heroin withdrawal.

Plaintiff argues that the ALJ wrongfully assumed that because Smith repeatedly returned to drug use, his substance addiction was a contributing factor material to a finding of disability. The Commission argues that the ALJ rejected Dr. Smith's opinion because Dr. Smith seemed to assume that Plaintiff was in remission a lot more than the record showed and, thus, that the medical findings of depression, psychosis or near-psychosis, a schizoaffective disorder, etc. with very disabling limitations were not due to addictions. Unlike the non-examining agency psychologist, however, Dr. Smith reviewed the entire record and listened to Smith's testimony. Dr. Smith was aware that Smith had a long standing problem with substance use. Dr. Smith recognized that Plaintiff's schizoaffective disorder was disabling irrespective of any substance use. Dr. Smith was the only physician to review the entire record and his opinion is the only express medical opinion in the record on the issue of materiality. It was unreasonable for the ALJ to reject his opinion where it was uncontradicted. Wilder v. Chater, 64 F.3d 335, 337 (7th Cir. 1995 (reversing ALJ's decision contrary to the uncontradicted testimony of a medical expert).

Dr. Smith's conclusion that substance addiction was not a contributing factor material to a finding of disability is consistent with other medical evidence. The evaluations of Drs. Herter and Pitchford reveal that Smith is disabled by the combination of a depressive disorder and either a bipolar disorder or schizoaffective disorder, bipolar type. The ALJ improperly substituted his opinion for that of a medical expert. The ALJ is not permitted to play doctor. Rohan v. Chater,

98 F.3d 966, 970 (7th Cir. 1996) (collecting cases). When no contradictory medical evidence exists, and the ALJ rejects a physician's opinion, the ALJ impermissibly substitutes his medical judgment for that of the expert. Wilder, 64 F.3d at 337.

The ALJ found that Smith's residual functional capacity while not abusing drugs and alcohol allowed him to perform work involving simple repetitive tasks, no public contact, or more than occasional contact with peers or supervisors.[5] The ALJ also found that Smith could not do his past relevant work, thus shifting the burden to the Commissioner to prove that he is capable of performing a significant number of other jobs within his residual functional capacity and taking into consideration his age, education and work experience. Drs. Herter and Pitchford, concluded that Smith's mental limitations would preclude work. Dr. Herter wrote that Smith was not employable because of his hostility, paranoia, and lack of judgment. Dr. Pitchford described Smith as having marked behavioral problems in that he was socially very inappropriate and could not maintain an ordinary routine. The ALJ neither mentioned nor discussed either Dr. Herter's or Dr. Pitchford's opinions. The ALJ must consider all of the evidence and discuss significant evidence contrary to his ruling. Lauer v. Apfel, 169 F.3d 489, 494 (7th Cir. 1999). Additionally, Dr. Pitchford's and Dr. Herter's opinions demonstrate that Smith does not retain the residual functional capacity to meet the basic demands of competitive unskilled work set forth in Social Security Ruling 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss

---

[5]Residual functional capacity is the most a claimant can do despite the total limiting effects of all his impairments.

-15-

of ability to meet any of these basic work-related activities would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

The opinions of Drs. Pitchford and Herter support a finding that Smith does not retain "the ability to respond appropriately to supervision, coworkers, and usual work situations," SSR 85-15, and is thus disabled at step five. The vocational expert's testimony does not satisfy the Commissioner's step five burden because the vocational expert was not asked by the ALJ to consider the limitations identified by Drs. Herter and Pitchford or Plaintiff's history of headaches.

In this case, it is impossible for this Court to "trace the path" of the ALJ's reasoning because he has not articulated a minimal basis for the conclusions that he reached. See Diaz v. Chater, 55 F.3d 300, 307-08 (7th Cir. 1995). The ALJ did not find Smith's testimony regarding his current or past drug use credible. However, that was not an adequate basis for finding that Smith's drug use was material to a finding of disability. There was substantial evidence in the record supporting Smith's claim of a mental impairment. Although the ALJ may credit certain evidence and discredit other evidence, in this case he impermissibly ignored evidence favorable to the claimant in articulating the basis for his decision. See Groves v. Apfel, 148 F.3d 809, 811 (7th Cir. 1998). The ALJ ruled out the opinion of Dr. Smith, the medical expert, that Smith's drug use was not material to a finding of a disability because he assumed it was based on an inaccurate view of Smith's history of substance abuse. The ALJ did not articulate a basis for that assumption in his decision. Further, he disregarded without discussing the opinions of Drs. Herter and Pitchford regarding Smith's inability to work. Thus, this Court finds that the ALJ's decision was not supported by substantial evidence.

## Conclusion

For the foregoing reasons, summary judgment is GRANTED in favor of Smith and against the Commissioner. The Commissioner's motion for summary judgment is DENIED. Pursuant to Sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and the case is remanded for an award of benefits.

Enter:

David H. Coar
United States District Judge

Dated: March 21, 2002